# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## NORTHERN DIVISION

| | |
|---|---|
| ARRIENNE MAE WINZLER, On Behalf Of Herself And All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TOYOTA MOTOR SALES USA, INC.,<br><br>Defendant. | **ORDER**<br><br>Case No. 1:10-cv-00003-TC<br><br>Judge Tena Campbell |

Arrienne Mae Winzeler brings a proposed class action suit against Toyota Motor Sales U.S.A. (Toyota) for an alleged defect in the IZZ-FE engine that can cause a car to stall unexpectedly. Ms. Winzeler owns a 2006 Toyota Corolla, a car currently under investigation by the National Highway Traffic Safety Administration (NHTSA) for the defect. Ms. Winzler does not claim that she has suffered any problems with the engine in her car. But she contends that she has been injured because she was "forced to operate an inherently dangerous vehicle, subjecting them to unreasonable risk of experiencing unforseen engine stalling without warning and bodily harm, and leaving them without recourse." (Comp. ¶ 31, 36, 41, 47 & 54). Ms. Winzeler has asserted claims for defective design, defective manufacture, failure to warn, negligence, breach of implied warranty of merchantability and breach of express warranty. She seeks the creation of an equitable fund to remedy the defects and a common fund to pay attorney fees.

Toyota moves to dismiss all claims in the complaint because Ms. Winzeler has not alleged that she suffered an injury from the defective product. It also argues that the court should dismiss the breach of warranty claims because Ms. Winzeler did not give the required notice and did not seek warranty service within any applicable warranty period. Finally, Toyota requests

that if the court does not dismiss the claims, the court should stay the lawsuit pending the conclusion of the NHTSA Investigation.

Because Ms. Winzeler has not suffered an injury, the court GRANTS Toyota's motion to dismiss.

**ANALYSIS**

When reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the court must presume the truth of all well-pleaded facts in the complaint, but need not consider conclusory allegations. Tal v. Hogan, 453 F.3d 1244, 1252 (2006), cert. denied, 127 S. Ct. 1334 (2007); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). Conclusory allegations are allegations that "do not allege the factual basis" for the claim. Brown v. Zavaras, 63 F.3d 967, 972 (10th Cir. 1995). See also Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) ("conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based") (emphasis added). The court is not bound by a complaint's legal conclusions, deductions and opinions couched as facts. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). And although all reasonable inferences must be drawn in the non-moving party's favor, Tal, 453 F.3d at 1252, a complaint will only survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, quoted in Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007). Stating a claim under Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 555).

Ms. Winzeler's claims fall into three categories: strict products liability, negligence, and breach of warranty.

Strict Products Liability and Negligence

Ms. Winzeler argues that she need only allege that she is in imminent danger of being harmed in order to have standing to bring a products liability action.[1] But Utah law does not support her argument. The Utah Supreme Court has adopted a three-part test to determine whether a plaintiff can prevail on a claim for strict products liability. "(1) that the product was unreasonably dangerous due to a defect or defective condition, (2) that the defect existed at the time the product was sold, and (3) that the defective condition was a cause of the plaintiff's injuries." Lamb v. B&B Amusements Corp., 869 P.2d 926, 929 (Utah 1993) (emphasis added). "It is well established that purchases of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own." Briehl v. Gen. Motors Corp., 172 F.3d 623, 628 (8th Cir. 1999). Even if some similar products sold by a manufacturer are defective, the plaintiff has not sustained damages unless the plaintiff purchased a defective product. See Rivera v. Wyeth-Ayerst Labs., 283 F.3d 315, 320 (5th Cir. 2002). Negligence claims also require damages to be cognizable. Williams v. Melby, 699 P.2d 723, 726 (Utah 1985). "While strict liability focuses on the nature of a product instead of on a defendant's conduct, actions in negligence and strict products liability . . . [both require the plaintiff's] injury [to be] proximately caused by the breach." Field v. Boyer Co., 952 P.2d 1078,

---

[1] Ms. Winzeler also seems to claim that the potential defect in the engine has damaged her economically, but such damages are clearly barred by the economic loss rule. See Davencourt at Pilgrims Landing Homeowners Assoc. v. Davencourt at Pilgrims Landing, LC, 2009 UT 65, ¶ 18, 221 P.3d 234.

3

1087 n.5 (Utah 1998).

In support of her contention that she need only allege a threat of future harm, Ms. Winzeler cites several cases where a risk of harm constituted a sufficient injury to bring a claim seeking injunctive relief. First, she points to DG ex rel Stricklin v. Devaughn, in which the Tenth Circuit held that in a foster care system where 1.2% of children were abused, the children's injury was "[t]he shared risk of being subjected to the purportedly unconstitutional practices." 594 F.3d 1188, 1197 (10th Cir. 2010). But the question in Stricklin concerned a continuing threat of future abuse by the defendants and alleged a violation of a constitutional right; importantly, the plaintiffs in Stricklin brought an action under 42 U.S.C. § 1983, not a products liability action.

Similarly, in Tandy v. City of Wichita, 380 F.3d 1277 (10th Cir.2004), the Tenth Circuit held that in order to seek injunctive relief to force Wichita Transit to comply with ADA requirements, the plaintiff must be able to establish that she is under a real and immediate threat of repeated injury. Tandy also concerned the immediate threat of constitutional injury if the court did not issue injunctive relief.

Finally, Ms. Winzeler points to B-S Steel of Kansas, Inc. v. Texas Indus. Inc., 439 F.3d 653, 667 (10th Cir. 2006), an antitrust case which held that "[a] plaintiff need only demonstrate a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur." Id. at 667. But the decisions interpreting § 16 of the Clayton Act have specifically permitted plaintiffs to seek injunctive relief prior to suffering injury. Id.

In contrast, Ms. Winzeler alleges that Toyota sold her a car that might have a defective

4

engine. Unlike the plaintiffs in Stricklin and Tandy, she alleges no constitutional violation. Further, the plaintiffs in Stricklin and Tandy faced the threat of continued violation of the law by the defendants. Here, Ms. Winzeler only faces the possibility that the engine in the car she has already purchased might be defective because some similar cars have defective engines. This allegation does not constitute a threat of continuing violation of the law like those enjoined by the court in Stricklin and Tandy. Ms. Winzeler cites no precedent to support her allegation that injunctive relief is proper in a products liability action where the product has not manifested a defect. Rather, decisions interpreting products liability have not allowed plaintiffs to seek injunctive relief unless they have experienced damages. See, e.g., Briehl v. Gen. Motors Corp., 172 F.3d 623, 628 (8th Cir. 1999) (dismissing a suit for breach of warranty brought by owners of GM vehicles with potentially defective anti-lock brake systems because none of the owners had sustained any damage as a result of the faulty system); Angus v. Shiley, Inc., 989 F.2d 142, 147 (3d Cir. 1993) (dismissing suit for potentially faulty heart valve where plaintiff's valve had not manifested any defect, though other similar valves had malfunctioned).

Ms. Winzeler also attempts to analogize her case to toxic torts. In toxic tort cases, courts have allowed plaintiffs to recover for mere exposure to a toxic substance when the exposure results in the need for additional health screening. Hansen v. Mountain Fuel Supply Co., 858 P.2d 970 (Utah 1993). As Defendant correctly points out, in order to recover for exposure, a medical test for early detection must exist and be prescribed by a qualified physician according to contemporary scientific principles. See id. The plaintiff has no grounds to argue that this requirement is met in her product-liability case.

Because Ms. Winzeler has not sustained any damages, her claims for strict products

5

liability and negligence must be dismissed.

Breach of Warranty

Ms. Winzeler next argues that she has sufficiently stated a claim for breach of warranty because she need not allege that the defective product has damaged her in order to state a claim. But, under Utah law, Ms. Winzeler must still have suffered an injury in order to recover under a breach of warranty theory. In Utah, "the elements of strict liability and breach of warranty are essentially the same." Straub v. Fisher & Paykel Health Care, 1999 UT 102, ¶ 16 n.1, 990 P.2d 384; Ernest W. Hahn, Inc. v. Armco Steel Co., 601 P.2d 152, 159 (Utah 1979). Breach of express and implied warranty claims require the plaintiff to have sustained damage as a result of the breach. See SME Indus., Inc. v. Thompson, Ventulett, Stainback and Assoc., Inc., 28 P.3d 669, 677 (Utah 2001) (holding that the breach of express warranty must be the direct and proximate cause of the damages sustained); see also, Briehl v. Gen. Motors Corp., 172 F.3d 623 (8th Cir.1999) (dismissing warranty claims for no damages); In re General Motors Corp., 383 F.Supp. 2d 1340, 1344 (W. D. Okl. 2005) (dismissing warranty claims even with a claim of damage because there was no allegation that GM had refused to fix the product or that the vehicle was unfit for transportation). "[T]he implied warranty of merchantability is simply a guarantee that [the vehicle] will operate in a "safe condition" and "substantially free of defects." Carlson v. Gen. Motors Corp., 883 F.2d 287, 297 (4th Cir. 1989); see also, Suzuki Motor Corp. v. Superior Court, 44 Cal. Rptr. 2d 526, 529 (Cal. Ct. App. 1995) (holding that the implied warranty of merchantability can be breached only if a vehicle manifests a defect that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation). In Carlson, the court held that a manufacturer of vehicles did not breach the implied warranty of merchantability

for cars that had not manifested any defect even though other cars of the same make an model had manifested the defect because the cars were driveable and the implied warranty did not guarantee resale value. Id.

Ms. Winzeler cites Holtzman v. Gen. Motors Corp., 2002 WL 1923883 (Mass. Supr. Jul. 2, 2002) and a footnote from Kent v. Daimler Chrysler Corp., 200 F.Supp.2d 1208, 1217 n.3 (N.D. Cal. 2002), to support her claim that the possibility that a product may cause damage is sufficient to bring a breach of warranty claim.

In Holtzman, a Massachusetts court held that a failure to plead damages was not fatal to a breach of warranty case brought for tire jacks that had not yet failed. The court acknowledged that many other jurisdictions have rejected "product liability claims by plaintiffs who do not allege that the goods sold failed – only that they might fail," but that Massachusetts courts allow recovery of purely economic damages for breach of warranty. Id. at *2-3. But Holtzman contradicts most other cases on the subject and in any event is distinguishable. In this case Ms. Winzeler has not alleged that her vehicle is useless for driving, while the tire-jack owners did claim that they could not use their tire jacks.

Ms. Winzeler's reliance on Kent is also flawed. Although the plaintiffs in Kent alleged a similar defect – some but not all Jeeps self-shifted from park to reverse – the court did not analyze the "no damages" issue. Kent, 200 F.Supp.2d at 1217. Rather, after mentioning the "no damages" issue in the introduction, the court engaged in a preemption analysis and an analysis of the doctrine of primary jurisdiction. Id. at 1210-19. Kent's passing mention of In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litigation, 55 F.3d 768 (3d. Cir. 1995) does not control the no-injury situation present in this case. Kent, 200 F.Supp.2d at 1217 n.3. In

7

re GM concerned the fairness of a class-action settlement and specifically discussed the variations in state law concerning damages requirements and economic loss rules that could prevent recovery for some class members if litigation proceeded. Id. at 815. In re GM does not overcome clear Utah precedent requiring Plaintiffs to have been damaged in order to bring a breach of warranty claim.

CONCLUSION

Because the Plaintiff has not alleged that her vehicle has manifested any defect, the court GRANTS Defendant's motion to dismiss.

DATED this 3rd day of August, 2010.

BY THE COURT:

_Tena Campbell_
_____
TENA CAMPBELL
Chief Judge